Green, J.,
delivered the opinion of the court.
The bill and amended bill state, that the defendant Webb, about the 29th of October, 1841, was indebted to the defendant, Partee, in the sum of $482 ; and at that time advanced him the sum of $18, making the entire indebtedness $500. To secure that sum the defendant Webb, executed to the defendant Partee, an absolute bill of sale, for the consideration of $700, expressed therein, for a negro woman Hester, and her child Richmond; and Partee executed his note to Webb for $200, payable 25th December, 1842; but said Webb was to have the right to redeem the negroes, by returning said note, and paying said sum of $500, the hire of the woman being equal to the interest. Some time in June or July, 1842, Partee sent for Webb, and proposed to take up the note for $200, and execute one for $100 only, saying that would serve to carry out the intention of the parties as well as the $200 note, and as Webb was indebted, he (Partee,) did not like to have his note out for $200, as Webb’s creditors might seek to make the negroes liable for their debt. Webb confided entirely in Partee, and submitted to have the matter fixed as he chose, so that the original intention of the parties was to be carried out. Thereupon, Partee executed a note to Webb for $100, due 25th December, 1842, which was ante dated, so as to bear *588 date 29th October, 1841, the date of the original transaction, and Webb gave up the note for $200. Partee, also, at the same time, executed, and delivered to Webb a written defea-sance, binding himself to sell to Webb the negro woman, and child, for six hundred dollars, if that sum should be paid by the 25th of December, 1842. Said defeasance was executed the same day the $100 note was given, and was also antedated, so as to bear even date with the bill of sale. This change in the papers was made at the suggestion of Partee, and agreed to by Webb, because he confided in Partee, who told him it was proper to give him a writing, showing his right to redeem; that the stipulation of a day for the payment to be made, would make no difference, as he had known a case, where the right to redeem a negro had been adjudged, after the lapse of ten or twelve years.
The complainant has purchased the defendant Webb’s equity of redemption, and has taken an assignment thereof, and has also taken an assignment of the $100 note on Par-tee ; the said Webb waiving demand and notice. The answer of Partee, denies that the transaction was originally a mortgage; denies that a note for two hundred dollars was executed, and afterwards delivered up, and a note for one hundred dollars was substituted in its place; denies that the de-feasance, and the one hundred dollar note, were ante-dated; but states that they were executed at the time they bear date, as part of the original transaction; denies that he sent for Webb, sometime after the original transaction, and in any way changed its terms; denies that Webb confided in him, and denies that he reserved any right to redeem said negroes, but only had a right to purchase them, as stipulated in the writing executed by him.
The deposition of Webb was taken by the complainant, by leave of the court; and he proves the allegations of the bill, in every particular.
*589 John O’Neal proves, that sometime in 1841 or 1842, he carried a message from Partee to Webb, the purport of which was, that as the time had expired which was limited for the redemption of the negroes, and as Webb could not get the money to redeem, Partee wished to take up the papers.
Jane O’Neal proves, that the understanding was that Webb was to have a chance to redeem the negroes at a stated time.
Mrs. L. E. Scott proves, that she is the daughter of Webb; that she saw in her father’s drawer a note for $200, from Par-tee to her father, in which the names of the negroes were inserted; that afterwards she saw, in the same place, the note for $100, and the paper obliging Par tee to return the ne-groes on payment of the money.
Mrs. Webb proves, that when the child was burned, Par-tee’s negro, on Partee’s horse came for her to go and see it.
James W. Hess proves, that after the commencement of •this suit, Partee said he was, and had been willing for Webb to redeem the negroes, but was not willing that Hinson should.
It is admitted, that Webb was indebted to Partee, before the negroes were conveyed, the sum of $500, except about $18 or $20, which was then advanced.
Webb has retained the note for $100 until the transfer to Hinson, though during all this period he has been in necessitous circumstances, and Partee has been fully able to pay it. The value of the negroes is proved to have been from $600 to $700.
It is objected by the defendant, that Webb is not a competent witness; and a majority of the court are inclined to think this objection is well taken. Webb is liable to Hinson, on his endorsement of the one hundred dollar note, and a decree against Partee, and satisfaction of that decree, will discharge that liability. On the other hand, if there be no decree against Partee, there is no impediment in the way of *590 a judgment on the $100 note against him, a satisfaction of which, would discharge Webb,
In either case, he is liable on his endorsement; anil in either case, that liability will be discharged by satisfaction from Partee. But the doubt arises on the possibility of Partee’s insolvency, so as to defeat the execution at law ; and the fact, that if the negroes have not been sold to a bonafide purchaser without notice, a decree for redemption would be a specific lien on them, and prevent a subsequent alienation of them, so as to defeat the decree. This doubt induces the court to disregard Webb’s testimony. But we think, that independent of his testimony, the complainant is entitled to a decree.
The bill of sale is for the consideration of $700, and as it is admitted, Webb only owed Partee $500, these facts indicate that Partee’s note would be for $200. Besides Mrs. Scott saw the $200 note.
The inference is irresistible, that the note for one hundred dollars, and the obligation to permit a re-purchase on the payment of $600, was the result of a subsequent transaction. This subsequent transaction, was not a purchase of the equity of redemption, because no new consideration was given, but in fact, the consideration was diminished. The altered terms in which the obligation is written, from the original agreement for redemption, cannot, under the circumstances, change the right of Webb to redeem ; and we think that right did exist by the original transaction.
The debt was a pre-existing one, for which the negroes were conveyed. The note executed by Partee, was never intended to be enforced, as is proved by the conduct of the parties in reference to it; and as there was, in the original transaction, evidently a condition of some sort; we infer that it was a mortgage for the security of the $500.
Partee said to Mr. Hess, he had always been willing that Webb should redeem the negroes.
*591 Jane O’Neal understood Webb had the right to redeem.
In these transactions, when a conditional sale is established, the court is inclined to construe it a mortgage, because in so doing, justice is done to all the parties. And when the conveyance is in consideration of a pre-existing debt, and such condition exists, it is difficult to find a case, that has not been held to be a mortgage.
Affirm the decree.